On October 5th, 1940, at about 9:15 a.m., plaintiff was driving his automobile along the Airline Highway, within the limits of the city of New Orleans, proceeding in the direction of Baton Rouge, Louisiana. *Page 503 
When he reached the intersection of Palm street, his car struck some large rocks, which were imbedded on the neutral ground of the intersection, causing him to lose control of the vehicle with the result that it collided against a telephone pole situated on the neutral ground. As a consequence of the impact, he received personal injuries and his automobile sustained considerable damage.
Claiming that the accident was due solely to the negligence of Mrs. W. Horace Williams, who was driving another automobile in the same direction as plaintiff, and who, it is alleged, suddenly and without warning swerved her car to the left or towards the neutral ground directly in the path of his car when the two cars were negotiating the Palm street intersection, plaintiff brought this suit against Mrs. Williams and the Employers Liability Assurance Corporation, Ltd., her liability insurance carrier, in which he seeks the recovery of damages for personal injuries sustained by him and also for a portion of the property damage received by his automobile. At the same time that this suit was filed, the Automobile Insurance Company of Hartford, Connecticut, plaintiff's insurer, instituted a similar action against the defendants to recover the amount which it paid to plaintiff under its insurance contract for the damage sustained by plaintiff's automobile. The cases were consolidated for trial upon agreement by the parties that whatever judgment was rendered in the instant matter would govern the decision to be rendered in that case.
The defendants in the suit filed a joint answer, in which they denied that Mrs. Williams was guilty of any negligence whatever and averred that the mishap was caused solely by the fault of plaintiff. And, pleading in the alternative, they asserted that, in the event the court should find that Mrs. Williams was at fault in any respect, then plaintiff's recovery should be barred because he was guilty of contributory negligence in failing to keep a proper lookout while driving on the highway; in failing to have his car under control; in driving at a speed in excess of law and such that would prevent his maintaining control over the movement of his car and in failing to drive on the proper side of the highway.
After a trial in the district court on the issues thus presented, there was judgment in plaintiff's favor awarding him damages in the sum of $1,625. Defendants have appealed.
The scene of the accident is the outbound roadway of the Airline Highway which runs from New Orleans to Baton Rouge, Louisiana. This highway is one of the main arteries for highway traffic in this state. It is a wide paved road comprising eight separate traffic lanes. Four of these lanes are designated for use by inbound traffic to New Orleans and the other for outbound traffic. They are separated in the center by a neutral ground. The Airline Highway, at the point where the accident occurred, is intersected by Palm street at oblique angles. At this intersection, the neutral ground of the highway is intersected at two points, one for traffic travelling on Palm street in the direction of the business district of New Orleans, and another for traffic proceeding out Palm street in the direction of Metairie Ridge. As the result of these intersections, a small island, extending approximately ninety feet in length and five or six feet in width, is formed at the corner of Palm street and the highway. The Airline Highway and Palm street accommodate considerable traffic. Because of this, and also because of the nature of the angle at which Palm street intersects the highway, the crossing is a dangerous one and, due to the fact that the highway accommodates through traffic, large signs have been posted by the city authorities at the approaches of the Palm street intersection marked "slow" as a warning to drivers of vehicles of the dangers which might be encountered. And, under the traffic ordinance, the speed permitted on the Airline Highway, within the limits of New Orleans, is 30 miles per hour.
Plaintiff's version of the accident is substantially as follows: That he was driving his new Hudson automobile along the Airline Highway in the direction of Baton Rouge at a speed of 30 to 35 miles per hour; that his car was being driven between the third and fourth traffic lanes (the fourth lane being the one nearest the neutral ground) with the left front and rear wheels approximately three feet from said neutral ground; that, as he approached Palm street, he noticed another automobile about a half-block ahead of him which was being driven between the second and third traffic lanes; that, as he continued on at the same speed (30 to 35 *Page 504 
miles per hour), the other car ahead of him slowed its speed to about 15 miles per hour; that, as the two cars approached Palm street, he had gained considerably upon the other car; that, when that car reached the Palm street intersection, his car was 30 or 40 feet to its rear; that, at this point, the other car swerved sharply to the left, without warning, directly into his path of travel; that, in order to avoid striking it, he was compelled to swerve to his left; that, when he did, his car struck the rocks situated on the island of the neutral ground intersection, causing him to lose control of his automobile and that it continued on over the neutral ground striking a telephone post and came to rest partly against this post and partly on the other side of the highway. He further says that the other automobile, after making the unusual movement to the left without any warning from its driver, apparently swerved quickly to the right and went into the upper side of Palm street, where it stopped at a point near the Palm street intersection with the highway; that this car contained two ladies; that one of the ladies immediately got out and ran over to his automobile; that she asked him if he was hurt; that he replied that he was and that his car was damaged; that she said that she was sorry and that she was turning around to go to the cemetery. Plaintiff further asserts that the lady told him that she was Mrs. W. Horace Williams; that she had insurance on her car; that she would have her insurance agent come out and view the accident; that said agent later appeared and that this agent admitted that the accident was caused through Mrs. Williams' neglect. Plaintiff further states that, at the time Mrs. Williams came over to him, he told her that she should not have attempted to make a turn in a busy highway without first giving a signal; that Mrs. Williams admitted that she did not give a signal; that he said that, if he had not swerved off the road on to the neutral ground, he would have been compelled to strike her car and maybe injure or kill her and that Mrs. Williams replied "well it doesn't matter, my life doesn't amount to anything anyway."
On the other hand, Mrs. Williams testified that she, accompanied by a friend, Miss G. Philson Williamson, had been driving to New Orleans from Denham Springs, Louisiana, on the morning of the accident; that she lives on North Line Avenue in Metairie Ridge and that the direct route to her home from the Airline Highway is via Palm street; that, however, it was not her intention to drive to her home but that it was her purpose to go to the Metairie Cemetery and place some flowers on her son's grave; that, upon reaching the intersection of Palm street she and her companion, Miss Williamson, were debating as to which would be the shortest route from the highway to the Metairie Cemetery; that they decided that it would be best to go by way of Palm street, thence to Friedrichs Ave., and thence over the Metairie road; that she did not attempt a left hand turn at the intersection of Palm street for the reason that, due to the very sharp oblique angle which she would be compelled to negotiate at the intersection, it was of greater facility to proceed on one block past Palm street to Hamilton street and, there, make a "U" turn into the upper side of the highway and then turn right into Palm street from said highway; that, because of the difficult turn at Palm street, it has been her custom to adopt the aforesaid procedure; that, accordingly, she proceeded past the intersection of Palm street to the next block where she made a "U" turn into the upper side of the highway; that, when she made this turn, she looked for traffic on the highway coming from New Orleans; that she had a clear vision down the highway for some two or three blocks; that, upon observing that there was no traffic whatever in her line of vision, she made the turn and proceeded up the highway towards Palm street; that her speed at no time exceeded 15 miles per hour and that she was driving her car between the second and third traffic lanes of the highway; that, as she reached the intersection of Palm street, she slowed down and turned to the right into Palm street; that, as she did so, she heard a terrific screeching of brakes and the burning of automobile tires in the roadway to her rear, which was followed by a loud crash; that, upon being thus apprised that an accident had occurred, she immediately stopped her car on Palm street just past the intersection of the highway; that she left her car and ran over to the place where plaintiff's automobile had crashed and that she did not realize that her car had any connection whatever with the accident until she spoke to plaintiff and was informed by him that he attributed his misfortune to her neglect. Mrs. Williams specifically denies that she, at any time, turned her car to the left, as plaintiff claims, or *Page 505 
that she ever entertained the idea of making a left hand turn into the other side of Palm street.
The testimony of Mrs. Williams, with relation to the movements of her car up to the time the accident occurred, is fully corroborated by the statement of Miss Williamson.
It will immediately be noticed from the testimony given in this case that plaintiff's version of the accident is so directly at variance with that of Mrs. Williams that it is impossible to accept his evidence as genuine without declaring that the opposing statements are not credible. The question, therefore, is whether the physical facts and circumstances of the case warrant such a result?
We do not think so. On the contrary, were it not for the fact that the district judge decided the issue in plaintiff's favor, we would have no hesitation whatever in holding that plaintiff has failed to prove the allegations contained in his petition by a preponderance of evidence. The evidence of Mrs. Williams and Miss Williamson appears to be clear, honest and intelligent and there is nothing that we have been able to detect in the statements of these ladies which would justify any suspicion of untruthfulness or exaggeration on their part. And, should we grant that plaintiff's statement is entitled to be accredited with the same integrity, he could not prevail forasmuch as, under those circumstances, it would be impossible to say that his evidence preponderated over that submitted on behalf of the defense.
However, an examination of plaintiff's testimony in the light of the physical facts of the case makes it apparent to us that the accident did not happen in the manner portrayed by him. His assertion that Mrs. Williams suddenly turned to the left directly in front of the path of his car at the upper portion of the intersection of Palm street, thereby causing him to run into the neutral ground in order to avoid contact with her car, is utterly at variance with the fact that, after the accident, her car was stopped on the upper side of Palm street or in a direction opposite to that which she would have been had she made the alleged sudden left turn. It is true that plaintiff explains that Mrs. Williams, after swerving sharply to the left, then turned sharply to the right (or opposite direction) and proceeded into the upper Palm street roadway. However, this explanation does not warrant serious consideration as it pictures a practically impossible movement on the part of the Williams car for the reason that the end of the neutral ground island, towards which Mrs. Williams is supposed to have turned, is somewhat past the roadway of the upper side of Palm street. Thus, after turning to the left at the far end of the island, she would hardly have been able to return to the upper part of Palm street unless she turned completely around.
Moreover, even though we felt that Mrs. Williams made the sudden left turn, as claimed by plaintiff, without warning and, therefore, was negligent, we are of the opinion that plaintiff's recovery would be nevertheless barred as he was obviously guilty of contributory negligence in operating his car at an excessive speed and in not having it fully under control. Plaintiff admits that he approached the intersection at a speed of 30 to 35 miles per hour. The speed limit on the Airline Highway within the city limits is 30 miles per hour. Plaintiff further admits that he, at no time, curtailed his speed during his approach to the intersection. This he should have done in view of the fact that there are warning signs prominently displayed near the Palm street intersection advising the drivers of vehicles to proceed slowly. Plaintiff also admits that the Williams car was going at a slow rate of speed; that he was constantly gaining on it and that he was not over 30 to 40 feet from its rear at the time the vehicles reached the Palm street intersection. It is evident that he was overtaking the Williams car and, if it was his intention to pass it, he should have given a signal of warning by blowing his horn, in accordance with the provisions of paragraph 12 (a) of Article V of the City Traffic Ordinance. If, on the other hand, plaintiff did not have the intention of passing the Williams car, he should have had his automobile as "the following vehicle" under such control and have driven it at such a speed so that he would have been able to stop it in case of emergency as required by the provisions of section 3, Rule 8 of Title 2 of the Highway Regulatory Act. See Act No. 286 of 1938.
Counsel for plaintiff, in oral argument and in brief, criticise the testimony of Mrs. Williams, particularly with reference to some of the alleged statements she is supposed to have made to plaintiff immediately *Page 506 
after the accident. Emphasis is placed upon a statement, which plaintiff attributes to Mrs. Williams, to the effect that she expressed her regret over the accident and that she said she was turning around to go to the cemetery. We are unable to see any admission of negligence in this statement, as Mrs. Williams clearly explains in her testimony that it was her purpose to go to the cemetery by way of Palm street. Again, it is said that the fact that Mrs. Williams, after being told by plaintiff that if he had not swerved his car on to the neutral ground he would have probably injured or killed her, remarked "Well, it doesn't matter, my life doesn't amount to anything anyway," shows, inferentially at least, that she conceded that she was at fault. We cannot see that this statement justifies the inference claimed by counsel. She concedes nothing by it and we take it to mean merely that, due to certain events which had caused her deep sorrow, the continuance of life was not of great consequence to her.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at his cost.
Reversed.